**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 20-21548-C-11 |
| | ) | |
| FALL LINE TREE SERVICE, INC., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor. | ) | Dkt. Control No.: HP-009 |
| | ) | |
| _____ | ) | |

**MEMORANDUM DECISION**

**Before: Christopher M. Klein, Bankruptcy Judge**
**_____**
**_____**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:


The question is whether to confirm a Chapter 11 Subchapter V Plan of Reorganization over the objection of the holder of a disputed unsecured claim.  The plan satisfies Subchapter V confirmation standards and will be CONFIRMED.


I

Despite the name Fall Line Tree Service, Inc., the Debtor corporation sells retail outdoor sporting goods under the trade name "The Village Board Shop" in South Lake Tahoe, California, and no longer provides arborist services.  The sole shareholders of the Debtor, and its operators, are Steve Nichols and Ashley Nichols.

The business was purchased by Fall Line Tree Service in May 2018 from Dick Yost Yaghlegian and Lauren Yaghlegian as trustees of the DLSK Family Trust ("DLSK") dated June 2, 2008.

II

The Subchapter V Chapter 11 case was filed March 13, 2020.
Lisa A. Holder was appointed Subchapter V Trustee.

DLSK filed proof of claim #4 as a secured claim for
$246,246.25 based on "purchase of Village Board Shop inventory."
DLSK also filed proof of claim #5 as an unsecured claim,
initially for $115,000.00 and later amended to $125,750.00,
initially said to be based on "cash loan for operating funds" and
later amended to be based on "purchase of Village Board Shop."

The Debtor objected to both DLSK proofs of claim in a nine-
count adversary proceeding against the Yaghlegians individually
and as trustees of DLSK.  In addition to objecting to claims 4
and 5, the complaint asserts counts for:  Avoidance of
Unperfected Security Interest; Declaratory Relief - Invalidity of
Contract; Avoidance and Recovery of Preferential Transfers;
Fraud; Fraudulent, Unlawful and Unfair Business Practices; and
Breach of Contract.

By order entered June 6, 2020, this court granted the
Debtor's unopposed motion to pay certain critical vendors.

The Plan of Reorganization filed September 11, 2020, has
four classes.  Classes 1 and 2 are secured claims.  Classes 3 and
4 are unsecured claims.

Class 1 is the secured claim of Blue Vine Capital for about
$25,837.30, for which the lien is retained and the debt is
reamortized over five years with monthly payments of $475.83 and
interest at 4 percent.

Class 2 is the secured claim of Amer Sports for about
$22,872.00, for which the lien is retained and the debt is paid

2

1  in a lump sum of $20,957.03 coupled with return of certain

2  inventory.

3     Class 3 consists of the disputed unsecured DSLK claims in

4  the approximate amount of $361,246.25, for which payment will be

5  in seasonable variable amounts totaling no more than 59 percent

6  ($213,135.29).  Monthly payments of $4,736.34 (January, February,

7  March, July, August, and December) or $2,368.17 (April, May,

8  June, September, October, and November) will be made into a

9  "Disputed Claim Reserve Account" to be held pending final claim

10 allowance or other subsequent agreement of the parties.

11    Class 4 consists of general unsecured claims estimated to be

12 approximately $49,989.30, for which payments will be no more than

13 59 percent ($29,493.69) over five years at $487.38 per month.

14    All monthly payments to classes 1, 3, and 4 are subject to

15 payment holidays for shutdown of business operations due to the

16 COVID-19 pandemic or other disaster.

17    Class 2 filed a ballot accepting the plan.  There were no

18 votes from classes 1 and 4.

19    DKLS, as Class 3, filed an objection to confirmation,

20 raising accounting issues, asserting assets are undervalued and

21 revenues understated, and contending that the Debtor has capacity

22 to pay creditors in full.

23    Despite DKLS not having § 1126(a) status as the holder of an

24 allowed claim due to the unresolved claim objections and without

25 having obtained Rule 3018(a) temporary allowance for the purpose

26 of accepting or rejecting, DKLS also filed a ballot purporting to

27 reject the plan.  11 U.S.C. § 1126(a); Fed. R. Bankr. P. 3018(a).

28

Case Number: 2020-21548 Case 20-21548 Filed: 12/3/2020 9:25:37 AM

1  The DKLS ballot is disregarded because DKLS is not eligible to

2  accept or reject the Plan.

3

4                                    III

5      The Debtor-in-Possession proposed the Plan.  The Subchapter

6  V Trustee supports plan confirmation and asserted on the record

7  that it meets all confirmation standards.

8      In plan confirmation proceedings, the plan proponent has the

9  burden of proof by a preponderance of evidence.

10     The evidence in support of confirmation consists of the

11 Debtor-in-Possession monthly operating reports and the

12 Declaration of Ashley E. Nichols in support of confirmation and

13 in response to the objection by the Yaghlegians.

14     Ms. Nichols testified in her Declaration that the Plan will

15 be funded entirely from sale and rental of outdoor sporting

16 goods, which is presently the Debtor's sole line of business.

17     She testified that she prepared the income and expense

18 projections from a combination of historical financial

19 performance and current financial performance.  Revenue

20 generation depends on weather trends and seasonal conditions in

21 the Lake Tahoe recreation market.  Revenues in Summer 2020 were

22 higher than usual because outdoor recreation was one of the few

23 activities permitted in Northern California in light of COVID-19

24 shutdowns.

25     Payroll expenses include the varying pay rates for employees

26 during different seasons, as well as seasonably variable hours of

27 operation.

28

1    The financials also reflect fixed costs, utilities,

2 advertising, supplies, maintenance, insurance, licensing,

3 professional fees, and cost of inventory.

4    The resulting projected disposable income formed the basis

5 for calculating the payments for creditors over the five-year

6 term of the plan.

7    The Subchapter V Trustee has supported the accuracy of the

8 projections.

9    No admissible evidence was proffered by the Yaghelians as

10 objecting creditors.

11

12                                IV

13    The essential elements for Chapter 11 Subchapter V plan

14 confirmation are set forth at 11 U.S.C. § 1191, which

15 incorporates with modifications 11 U.S.C. § 1129(a)-(b).

16

17                                A

18    The plan must comply with the applicable provisions of title

19 11.  A review of the plan reveals no deviation from the

20 applicable provisions of title 11.  11 U.S.C. § 1129(a)(1).

21

22                                B

23    The proponent of the plan must comply with the applicable

24 provisions of title 11.  A review of the record reveals that the

25 Debtor, as plan proponent, has complied with the applicable

26 provisions of title 11.  No view to the contrary has been

27 asserted.  11 U.S.C. § 1129(a)(2).

28

C

   The plan must have been proposed in good faith and not by
any means forbidden by law.  The pending objection to
confirmation requires this court to evaluate the evidence
probative of these questions.  Fed. R. Bankr. P. 3015(f).  The
declaration testimony of Ashley Nichols is credible and refutes
the assertion that funds of the estate were used for purchase of
personal "toys" for the Nichols family.  The objectors relied on
unauthenticated social media sources to complain about the
purchase of a vehicle, travel trailer, 2 motorcycles and 2 quads
for the kids, and a puppy.  Ms. Nichols admits the acquisitions
of personal property for the family and explains that the source
of funds for those purchases was separate property derived from
income generated from rental property that the Nichols own,
combined with their personal credit.  The Subchapter V Trustee
confirms that funds of the Debtor corporation have not been
squandered.  The objectors have proffered no evidence to the
contrary and incorrectly ignore limited liability principles by
conflating the finances of the Debtor corporation with the
personal finances of the individual owners without any evidence
to suggest improper commingling or other failure to observe
corporate formalities.  This court believes the Ashley Nichols
declaration testimony and finds that the plan has been proposed
in good faith and not by any means forbidden by law.  11 U.S.C.
§ 1129(a)(3).

D

As relevant to this case in which securities are not being issued and property is not being transferred, any payment made or to be made by the debtor for services or for costs and expenses in or in connection with the case and incident to the case is subject to approval by this court as reasonable.  11 U.S.C. § 1129(a)(4).

E

The plan proponent has disclosed the identity and affiliations of the individuals who will serve after confirmation as directors and officers of the Debtor corporation – to wit, Mr. and Mrs. Nichols.  No other provision of § 1129(a)(5) is relevant.  11 U.S.C. § 1129(a)(5).

F

No governmental regulatory commission has jurisdiction over the rates of the debtor.  11 U.S.C. § 1129(a)(6).

G

Classes 1, 2, 3, and 4 are impaired under the terms of the plan.

1

The holder to the claim in the single-member Class 2 has accepted the plan.  11 U.S.C. § 1129(a)(7)(A)(i).

7

2

Each holder of a claim under Classes 1, 3, and 4 will
receive or retain under the plan on account of such claims
property of a value as of the effective date of the plan, that is
not less than the amount that such holder would receive or retain
if the debtor were liquidated under chapter 7 on such date.  11
U.S.C. § 1129(a)(7)(A)(ii).

a

The effective date of the plan prescribed at Plan Article 8,
paragraph 19, is the first business day following the date that
is 14 days after the entry of the confirmation order.  However,
if there is a stay of the confirmation order on such date, then
the effective date is the first business day after the date on
which the stay expires or is otherwise terminated.  For purposes
of the hypothetical liquidation analysis, it is assumed there
will be no stay.

The Debtor's hypothetical liquidation analysis is set forth
at Plan Exhibit A.  The asset estimates total $419,997.00: cash
on hand, $75,691.00; inventory, $316,806.00; office furniture and
equipment, $16,000.00; machinery and equipment, $4,500.00;
building security deposit, $7,000.00.

b

The Objection to plan confirmation asserts that the
liquidation analysis fails to account for the $300,000.00
purchased goodwill asset that was part of the original sale by
the Yaghlegians and that it understates inventory value.

8

i

2    Addressing goodwill, the objector's counsel, during oral

3 argument, asserted that he is a Certified Public Accountant who

4 has taught accounting at a local junior college and is expert in

5 matters of accounting and stated his opinion that Generally

6 Accepted Accounting Principles (GAAP) requires taking goodwill

7 into account.  There are two problems with this.

ii

10    The first problem is a fundamental proposition of evidence

11 regarding attorney testimony.  Statements by counsel about

12 substantive matters made during argument to the court are not

13 evidence.  Such statements are not based on personal knowledge.

14 Fed. R. Evid. 602; In re Gire, 107 B.R. 739, 746 (Bankr. E.D.

15 Cal. 1989).  Nor is the attorney under oath.  Fed. R. Evid. 603.

16 The attorney makes the attorney's personal credibility an issue

17 in the case.  Gire, 107 B.R. at 746.  Attorney testimony also

18 risks offending ethical rules.  See CAL. RULE OF PROFESSIONAL CONDUCT

19 3.7 (2018).

20    Anything that the attorney asserts in favor of the client is

21 worthless as a matter of evidence, but anything that the attorney

22 says that does not help the client may become admissible in

23 evidence as an evidentiary admission by a party opponent.  Fed.

24 R. Evid. 801(d)(2); In re Applin, 108 B.R. 253, 259 (Bankr. E.D.

25 Cal. 1989).

iii

The second problem is that the court has not ruled that the Objectors' counsel is an expert whose specialized knowledge will help the court, as trier of fact, to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.

The fact in issue is liquidation in a hypothetical chapter 7 case.  Experience teaches that business goodwill evaporates in liquidation following closure of the business and sale at auction; no going concern is being sold.  Hence, testimony about the value of goodwill under GAAP is irrelevant to forced sale analysis of chapter 7 hypothetical liquidation value.

In short, purchased goodwill in the original sale of the going concern that has since devolved into this chapter 11 case is not an asset for purposes of hypothetical chapter 7 liquidation analysis.

iv

The Yaghlegian objection that inventory value is understated is a naked assertion not supported by evidence.  The monthly operating reports invoked in the objection are not probative of inventory value.

The admissible evidence pertaining to inventory that is valued in the liquidation analysis at $316,806.00 is the Ashley Nichols Declaration.  Book value at actual wholesale cost was used in the liquidation analysis for the Debtor's retail inventory and for rental inventory.  Some of the inventory is more than three years old and is of doubtful value.  Overall, the retail inventory likely would sell for less than 70 percent of

1　wholesale cost.　The rental inventory likely would sell as "used"

2　gear for not more than 50 percent of wholesale cost.

3　　　Although the plan proponent's liquidation analysis is

4　premised on $233,742.85 being available for unsecured creditors,

5　yielding a 57 percent dividend for $410,810.25 of claims, this

6　trier of fact concludes that less than $233,742.85, perhaps as

7　little as $140,000 would be available in a liquidation based on

8　the likely difference between the inventory valued at full

9　wholesale cost and the discounted yields from a forced sale

10　auction.　Hence, unsecured creditors will receive more under the

11　plan than from a chapter 7 liquidation.

12　　　It follows that the preponderance of evidence belies the

13　Objection.

14

15　　　　　　　　　　　　　　　　　c

16　　　The Class 1 claim is secured in the amount of approximately

17　$25,837.30.　The single member of the class retains its first

18　priority lien on the Debtor's personal property assets unaffected

19　by the plan.　The claim is reamortized over five years with

20　interest accruing at the rate of 4 percent/year.　Monthly

21　principal and interest payments are $475.83 and will total

22　$28,549.80.　The present value of the monthly payments is

23　$25,837.30.　If there were to be a liquidation, the Class 1

24　creditor would receive $25,837.30 without interest.　Hence, the

25　Class 1 creditor is receiving not less than what would be

26　received in a hypothetical chapter 7 liquidation on the effective

27　date of the plan.

28

11

                                    d

Classes 3 and 4 are promised not more than 57 percent of their claims.  As noted above this court concludes that a liquidation value that would yield a 57 percent dividend is optimistic.  In an actual liquidation the dividend to unsecured creditors likely would be less than 57 percent.  It follows that the holders of Classes 3 and 4 claims will receive property of a value, as of the effective date of the plan, that is not less than the amount they would receive if the debtor were liquidated under chapter 7.  11 U.S.C. § 1129(a)(7)(A)(ii).


                                    H

Each class is impaired and the respective treatments are specified.  11 U.S.C. § 1123(a)(3).

The holder of the single-creditor Class 2 secured claim has accepted the plan.  11 U.S.C. § 1129(a)(8)(A).

No holder of a Class 1, 3, or 4 claim, all of which are impaired, has accepted the plan.

Hence, § 1129(a)(8) has not been satisfied.


                                    I

The only priority claims consist of administrative expense claims and $12,971.28 in priority tax claims.

The administrative claims are to be paid in equal monthly installments until paid and over a period not to exceed five years after the effective date.  It is permissible to finance Subchapter V § 507(a)(2) administrative expense claims in the

                                    12

1   manner proposed at Plan Article 3, Paragraph 3.02.  11 U.S.C.

2   § 1191(e).

3       Priority tax claims may, as proposed in Plan Article 3,

4   Paragraph 3.03, be paid over a period ending not later than five

5   years after the date of the order for relief, i.e., March 13,

6   2020.  11 U.S.C. § 1129(a)(9)(C).

7       There are no other priority claims that appear of record.

8   Hence, the Plan complies with the priority claim confirmation

9   provisions.  11 U.S.C. § 1129(a)(9).

10

11                              J

12      Class 2, which does not include any insider, has accepted

13  the plan.  11 U.S.C. § 1129(a)(10).

14

15                              K

16      This court is persuaded by preponderance of the evidence

17  that confirmation is not likely to be followed by the

18  liquidation, or the further financial reorganization of the

19  debtor.

20      The pattern of profitable business operations achieved under

21  the conditions of the COVID-19 pandemic are persuasive on this

22  point.    11 U.S.C. § 1129(a)(11).

23

24                              L

25      All fees required to be paid pursuant to 28 U.S.C. § 1930

26  that are owed on or before the effective date of the plan have

27  been paid or will be paid on the effective date.  Prospective

28

1  quarterly fees under § 1930(a)(6) or (a)(7) will be able to be

2  timely paid as they accrue.

3       The United States trustee appeared at the confirmation

4  hearing and took no exception to confirmation.  11 U.S.C.

5  § 1129(a)(12).

6

7                     M

8       There are no retiree benefits, as that term is defined in

9  § 1114, in this case.  Hence, 11 U.S.C. § 1129(a)(13) is not an

10  impediment to confirmation.

11

12                     N

13       There are no domestic support obligations applicable to this

14  case.  Hence, 11 U.S.C. § 1129(a)(14) is not an impediment to

15  confirmation.

16

17                     O

18       The debtor is not an individual.  Hence, 11 U.S.C.

19  § 1129(a)(15) is not an impediment to confirmation.

20

21                     P

22       Any transfer of property is made in accordance with

23  applicable provisions of nonbankruptcy law that governs the

24  transfer of property by a corporation.   11 U.S.C.

25  § 1129(a)(16).

26

27

28

14

Q

All requirements of § 1129(a) have been satisfied in this case except § 1129(a)(8), with respect to Classes 1, 3, and 4. The plan may nevertheless be confirmed if the plan does not discriminate unfairly and is fair and equitable with respect to classes 1, 3, and 4.  11 U.S.C. § 1191(b).

1

Class 1 is a secured class with an allowed secured claim of $25,837.30.  Under the plan, the holder of the claim in this single-member class retains its lien and receives a stream of monthly payments of $475.83 for five years.  The total payments of $28,549.80 exceed the amount of the allowed secured claim and reflect interest at 4 percent/year.  This court is persuaded that 4 percent/year provides the Class 1 creditor with value, as of the effective date of the plan that is at least the value of such holder's interest in the estate's interest in such property.

Accordingly, treatment of Class 1 is fair and equitable and does not discriminate unfairly.  11 U.S.C. §§ 1129(b)(2)(A) & 1191(c)(1).

2

Classes 3 and 4 are classes of unsecured claims, neither of which has accepted the plan.  Confirmation requires focus on all projected disposable income.

15

a

Projected disposable income appears as Plan Exhibit B.  The
total projected disposable income is $366,350.00.  Priority tax
claims are $12,971.28.  Projected administrative expenses are
$75,000, which could be higher if the pending adversary
proceeding against the Yeghlegians and DLSK requires more
professional services than presently projected.


b

Class 4 consists of allowed unsecured claims of
approximately $49,989.30 that would be paid "no more than" 59
percent, or "no more than" $29,493.69, over five years from the
effective dated of the plan in a stream of monthly payments of
$487.38.  That stream of payments totals $29,242.80, or 58.49812
percent of the Class 4 allowed unsecured claims.


c

Class 3 consists of the Yaghlegian creditors and DLSK, whose
disputed unsecured claims are approximately $361,246.25 to which
objection has been made.  Hence, the claims have not yet been
allowed.  Nor was there a request for temporary allowance for the
purpose of accepting or rejecting the plan.  Fed. R. Bankr.
P. 3018(a).

The Plan provides that the Class 3 creditors will be paid no
more than 59 percent, of $213,135.29 of the total asserted
claims.  This is the same treatment as Class 4.

The payments, however, differ from Class 4 in two respects.
First, payments shall be paid into a Disputed Claim Reserve

16

1   Account to be held and maintained by the Debtor pending

2   resolution of the proceedings objecting to the Yaghlegian and

3   DLSK claims.  Second, payments are adjusted seasonally to reflect

4   the nature of business revenues: $4,736.34/month for January,

5   February, March, July, August, and December; and $2,368.17/ month

6   for April, May, June, September, October, and November.

7

8                                3

9       The differences in treatment between secured Class 1 and

10   Classes 3 and 4 are rationally related to the rights of the

11   parties and to seasonal cash flow realities of the Lake Tahoe

12   recreation market.  The plan provides that all projected

13   disposable income of the Debtor for a period of five years, i.e.,

14   $366,350.00, will be applied to make payments under the plan.  11

15   U.S.C. § 1191(c)(2)(A).

16       The value of all property to be distributed under the plan

17   is not less than the $366,350.00 projected disposable income.  11

18   U.S.C. § 1191(c)(2)(B).

19       The Debtor will be able to make all payments under the plan.

20   11 U.S.C. § 1191(c)(3)(A)(i).

21       In sum, the plan does not discriminate unfairly, and is fair

22   and equitable within the meaning of 11 U.S.C. § 1191(b).

23

24                            ***

25       This Memorandum Decision contains findings of fact and

26   conclusions of law under Federal Rule of Civil Procedure

27   52(a)(1), as incorporated by Federal Rules of Bankruptcy

28   Procedure 7052 and 9014.

1      An appropriate order confirming the plan will be entered.

2

3    Dated: December 03, 2020

4

5

6                      United States Bankruptcy Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **INSTRUCTIONS TO CLERK OF COURT**
   **SERVICE LIST**

2

3      The Clerk of Court is instructed to send the attached
   document, via the BNC, to the following parties:

4  Fall Line Tree Service, Inc.
   3552 Lake Tahoe Blvd.

5  South Lake Tahoe, CA 96150

6  Galen M. Gentry
   520 9th Street, Suite 230

7  Sacramento, CA 95814

8  Lisa A. Holder
   3710 Earnhardt Dr

9  Bakersfield, CA 93306

10 Robert Huckaby
   3330 Lake Tahoe Blvd., #10

11 South Lake Tahoe, CA 96150

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28